# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **KAREN SONGY** | **CIVIL ACTION** |
| **VERSUS** | **NO. 17-10209** |
| **NANCY BERRYHILL, ACTING COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION** | **SECTION: "G"(2)** |

## ORDER AND REASONS

Before the Court are Plaintiff Karen Songy's ("Plaintiff") objections[1] to the Findings and Recommendation of the United States Magistrate Judge assigned to the case.[2] Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) for review of the final decision of Defendant, the Acting Commissioner of the Social Security Administration (the "Commissioner" or "Defendant"), denying her claim for disability insurance benefits ("DIB") under the Social Security Act (the "Act").[3] The Magistrate Judge recommended that the Administrative Law Judge's ("ALJ") decision denying Plaintiff's claim for DIB benefits be affirmed.[4] Plaintiff objects, arguing that the ALJ's decision was not supported by substantial evidence.[5] Having considered Plaintiff's objections, the Magistrate Judge's Findings and Recommendation, the record, and the applicable law, for the following reasons, the Court will sustain Plaintiff's objections, reject the Magistrate

---

[1] Rec. Doc. 16.

[2] Rec. Doc. 15.

[3] Rec. Doc. 1.

[4] Rec. Doc. 15 at 33.

[5] Rec. Doc. 16.

Judge's Findings and Recommendation, and remand this action to the ALJ for additional proceedings consistent with this opinion.

## I. Background

### A.    *Procedural History*

Plaintiff filed an application for DIB on November 13, 2014, alleging that she had been disabled since August 23, 2014, due to "degenerative arthritis worse in hips, knees, shoulders;" diabetes, hypertension, lupus, fibromyalgia, and high cholesterol.[6] After Plaintiff's claim was denied at the agency level, Plaintiff requested a hearing before an ALJ, which was held on May 25, 2016.[7] Plaintiff and a vocational expert testified at the hearing.[8]

On June 17, 2016, the ALJ issued a decision denying Plaintiff's application for benefits.[9] The ALJ analyzed Plaintiff's claim pursuant to the five-step sequential evaluation process.[10] At

---

[6] Adm. Rec. at 141–42, 160.

[7] *Id.* at 33–72.

[8] *Id.*

[9] *Id.* at 7–18.

[10] The five-step analysis requires consideration of the following:

First, if the claimant is currently engaged in substantial gainful employment, he or she is found not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

Second, if it is determined that, although the claimant is not engaged in substantial employment, he or she has no severe mental or physical impairment which would limit the ability to perform basic work-related functions, the claimant is found not disabled. *Id.* §§ 404.1520(c), 416.920(c).

Third, if an individual's impairment has lasted or can be expected to last for a continuous period of twelve months and is either included in a list of serious impairments in the regulations or is medically equivalent to a listed impairment, he or she is considered disabled without consideration of vocational evidence. *Id.* §§ 404.1520(d), 416.920(d).

Fourth, if a determination of disabled or not disabled cannot be made by these steps and the claimant has a severe impairment, the claimant's residual functional capacity and its effect on the claimant's past relevant work are

step one, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since August 23, 2014, the alleged onset date, through the date she was last insured, December 31, 2014.[11] At step two, the ALJ concluded that through the date last insured, Plaintiff had the following severe impairments: "obesity, myofascial pain syndrome, and osteoarthritis/degenerative spinal changes."[12] At step three, the ALJ found that through the date last insured, Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments under the regulations.[13]

At step four, the ALJ found that through the date last insured, Plaintiff had the residual functional capacity ("RFC") to perform a range of light work, "as she could lift and/or carry (including pushing or pulling) 20 pounds occasionally and 10 pounds frequently, stand and/or walk for six hours per eight-hour work day and sit for six hours per eight-hour work day, all with normal breaks."[14] The ALJ determined that Plaintiff "could only occasionally balance, stoop, kneel,

---

evaluated. If the impairment does not prohibit the claimant from returning to his or her former employment, the claimant is not disabled. *Id*. §§ 404.1520(e), 416.920(e).

Fifth, if it is determined that the claimant cannot return to his or her former employment, then the claimant's age, education, and work experience are considered to see whether he or she can meet the physical and mental demands of a significant number of jobs in the national economy. If the claimant cannot meet the demands, he or she will be found disabled. *Id*. §§ 404.1520(f)(1), 416.920(f)(1). To assist the Commissioner at this stage, the regulations provide certain tables that reflect major functional and vocational patterns. When the findings made with respect to a claimant's vocational factors and residual functional capacity coincide, the rules direct a determination of disabled or not disabled. *Id*. § 404, Subpt. P, App. 2, §§ 200.00-204.00, 416.969.

[11] Adm. Rec. at 12. "A claimant is eligible for benefits only if the onset of the qualifying medical impairment [or combination of impairments] began on or before the date the claimant was last insured." *Loza v. Apfel,* 219 F.3d 378, 393 (5th Cir. 2000).

[12] Adm. Rec. at 12.

[13] *Id*. at 13.

[14] *Id*. at 14.

crouch, crawl and climb ramps or stairs, and could never climb ropes, ladders or scaffolds."[15] The ALJ also determined that Plaintiff "could frequently handle and finger with the bilateral upper extremities," but could not tolerate overhead reaching.[16] At step four, the ALJ also found that through the date last insured, Plaintiff was capable of performing her past relevant work as an optician, tutor, assistant manager, library aide, and teacher aide.[17] Therefore, the ALJ determined that Plaintiff was not disabled from August 23, 2014, the alleged onset date, through December 31, 2014, the date last insured.[18]

Plaintiff requested review by the Appeals Council. The ALJ's decision became the final decision of the Commissioner for purposes of this Court's review after the Appeals Council denied review on August 4, 2017.[19] On October 5, 2017, Plaintiff filed a complaint seeking judicial review pursuant to Section 405(g) of the Act.[20] This matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b) and Local Rule 73.2(B). On December 18, 2017, the Commissioner answered the complaint.[21]

On February 20, 2018, Plaintiff filed a memorandum arguing that the ALJ improperly substituted her own medical opinion for the opinions of Plaintiff's treating physician, Dr. Glynn

---

[15] *Id.*

[16] *Id.*

[17] *Id.* at 17.

[18] *Id.*

[19] *Id.* at 1–6.

[20] Rec. Doc. 1.

[21] Rec. Doc. 7.

Hebert, and the consulting examiner, Dr. Felix Rabito.[22] Specifically, Plaintiff argued that an RFC checklist questionnaire completed by Dr. Hebert on April 14, 2016, and a narrative report completed by Dr. Rabito on January 6, 2014, do not support the ALJ's RFC determination that Plaintiff can stand and/or walk for six hours of an eight hour day, as is required of "light" work.[23] On March 20, 2018, the Commissioner filed a memorandum arguing that substantial evidence supports the ALJ's determination.[24]

**B.      *The Magistrate Judge's Findings and Recommendation***

On June 25, 2018, the Magistrate Judge recommended that Plaintiff's case be dismissed with prejudice because the ALJ used the appropriate legal standards to weigh and resolve conflicts in the medical opinion evidence and to determine Plaintiff's RFC.[25] The Magistrate Judge found that the ALJ weighed the opinions of Drs. Hebert and Rabito under the appropriate legal standards and that substantial evidence supported the ALJ's decision to give the opinion of Dr. Hebert little weight and the opinion of Dr. Rabito partial weight.[26]

The Magistrate Judge rejected Plaintiff's argument that the Fifth Circuit's decision in *Williams v. Astrue*,[27] an unpublished, non-precedential decision, requires remand of this case to

---

[22] Rec. Doc. 13.

[23] *Id*. (citing Adm. Rec. at 280, 227–29).

[24] Rec. Doc. 14.

[25] Rec. Doc. 15 at 33.

[26] *Id*. at 19.

[27] 355 F. App'x 828 (5th Cir. 2009).

the ALJ.[28] The Magistrate Judge noted that *Williams* relied on *Ripley v. Chater*,[29] a published, precedential decision, where the Fifth Circuit held that an ALJ can determine an individual's RFC without a medical opinion addressing her specific functional limitations, provided that the remainder of the evidence substantially supports the ALJ's determination.[30] Furthermore, the Magistrate Judge found that Fifth Circuit panels in two other unpublished cases rejected the argument advanced by Plaintiff here that an ALJ cannot make an RFC determination absent a medical expert opinion on the plaintiff's ability to work.[31] Therefore, the Magistrate Judge concluded that "the ALJ in any case is competent to assess the claimant's residual functional capacity even if the record is devoid of an assessment by a medical source, provided there is substantial evidence in the existing record to support it."[32]

The Magistrate Judge determined that the ALJ did not err in affording Dr. Hebert's checklist opinion little weight.[33] The Magistrate Judge noted that the opinion was issued nearly two years after Plaintiff's alleged onset date and more than one year after her date last insured.[34] The Magistrate Judge reviewed the medical records documenting Plaintiff's treatment history with

---

[28] Rec. Doc. 15 at 20.

[29] 67 F.3d 552 (5th Cir. 1995).

[30] Rec. Doc. 15 at 20.

[31] *Id*. at 20–21 (citing *Holifield v. Astrue*, 402 F. App'x 24 (5th Cir. 2010); *Gutierrez v. Barnhart*, No. 04-11025, 2005 WL 1994289 (5th Cir. Aug. 19, 2005)).

[32] *Id*. at 21 (citing *Joseph-Jack v. Barnhart*, 80 F. App'x 317, 318 (5th Cir. 2003)).

[33] *Id*. at 22.

[34] *Id*.

Dr. Hebert, and found that the ALJ had good cause to give the checklist opinion little weight.[35] Specifically, the Magistrate Judge noted that the medical records showed that Plaintiff made subjective complaints of pain, but there were no abnormal findings on physical examination.[36] Furthermore, the Magistrate Judge noted that the Fifth Circuit has "held that checklist opinions are unworthy of credence when they are not adequately supported by or are inconsistent with the medical records."[37]

The Magistrate Judge also found that the evidence supported the ALJ's decision to give the opinion of Dr. Rabito partial weight.[38] The Magistrate Judge noted that Dr. Rabito's report predated Plaintiff's alleged onset date by approximately eight months.[39] Dr. Rabito stated that Plaintiff's most significant findings "were her obesity and inability to sustain heel or toe walking due to poor balance and weakness in the lower extremities," Moreover, the Magistrate Judge noted that Dr. Rabito found that Plaintiff "appeared to be capable of normal ambulatory activity, which does not require strenuous and repetitive use of her upper extremities or long periods on her feet."[40] However, Dr. Rabito did not quantify the terms "strenuous" or "long."[41]

---

[35] *Id*. at 23–25.

[36] *Id*. at 25.

[37] *Id*. at 25–26 (citing *Foster v. Astrue*, 410 F. App'x 831, 833 (5th Cir. 2011)).

[38] *Id*. at 27.

[39] *Id*.

[40] *Id*. at 28.

[41] *Id*.

Additionally, the Magistrate Judge noted that a rheumatologist, Dr. Phillip Sedrish, examined Plaintiff on November 10, 2014.[42] Dr. Sedrish diagnosed Plaintiff with mysofascial pain syndrome, diabetes, hyperlipidemia, and hypertension, but opined that Plaintiff's "real health issues" were morbid obesity, "very serious physical deconditioning" and "significant sleep apnea."[43] He did not believe Plaintiff had lupus.[44] Dr. Sedrish strongly recommended that plaintiff have a sleep study, and he advised Plaintiff to return to see him after the study.[45] However, the Magistrate Judge noted that there is no evidence that Plaintiff had a sleep study or returned to see Dr. Sedrish.[46] Dr. Sedrish also prescribed "low-dose tramadol to make [Plaintiff's] daily chores more doable."[47] He also recommended that Plaintiff consider surgical weight-loss options.[48]

Based on these records, the Magistrate Judge determined that the ALJ was justified in declining to accept Dr. Hebert's restrictions that Plaintiff could not perform jobs requiring fine and dexterous use of her hands and that she experienced swelling, pain, shortness of breath and fatigue that required her to recline daily and precluded work activity, because no objective findings by Drs. Hebert, Sedrish or Rabito supported those limitations.[49] Specifically, the Magistrate Judge found that the following evidence supported the ALJ's determination: (1) physical examinations

---

[42] *Id.* at 29.

[43] *Id.*

[44] *Id.*

[45] *Id.*

[46] *Id.*

[47] *Id.*

[48] *Id.*

[49] *Id.* at 30.

of Plaintiff's back, extremities and hands during the relevant time period were generally within normal limits; (2) Plaintiff was treated conservatively with medication; (3) Dr. Rabito indicated that Plaintiff had no significant abnormalities; and (4) both Dr. Rabito and Dr. Sedrish noted that Plaintiff was able to ambulate normally.[50]

Therefore, because Dr. Hebert's questionnaire responses were inconsistent with the medical records and because Dr. Rabito placed vague and undefined limitations on Plaintiff's physical abilities, the Magistrate Judge concluded that the ALJ properly weighed the conflicting evidence.[51] Furthermore, the Magistrate Judge found that the ALJ's RFC determination was based on substantial evidence because the ALJ relied on reports from examining and reviewing physicians and adequately dealt with any dispute between them.[52] Accordingly, the Magistrate Judge found that substantial evidence supported the ALJ's RFC determination.[53]

## II. Objections

### A.    *Plaintiff's Objections*

Plaintiff timely filed objections to the Magistrate Judge's Findings and Recommendation.[54] Plaintiff argues that the ALJ improperly substituted her own medical opinion for the opinions of Drs. Hebert and Rabito.[55] Plaintiff contends that the Fifth Circuit has established that an ALJ

---

[50] *Id.*

[51] *Id.* at 32.

[52] *Id.* (citing *Fontenot v. Colvin*, 661 F. App'x 274, 277 (5th Cir. 2016)).

[53] *Id.*

[54] Rec. Doc. 16.

[55] Rec. Doc. 16-2 at 1.

cannot substitute her medical opinion for that of a treating or examining physician.[56] Plaintiff recognizes that there are cases that support the proposition that in the absence of such an opinion, the ALJ may make an RFC determination.[57] Plaintiff also recognizes that an ALJ may reject the findings of a treating or examining physician.[58] Plaintiff argues that the Magistrate Judge conflated these two propositions.[59] Therefore, Plaintiff contends that this Court should reject the Magistrate Judge's recommendation because an ALJ may not "reject the medical opinions of a treating or examining physician and make a contrary medical finding without support from a treating or examining source."[60]

Plaintiff argues that the opinion of Dr. Hebert clearly confirms that Plaintiff cannot perform light work because Dr. Hebert opined that Plaintiff is unable to stand and/or walk for six hours in an eight-hour day.[61] Plaintiff asserts that the opinion of Dr. Rabito also supports this conclusion because "any fair interpretation of [Dr. Rabito's] preclusion of activity which requires 'long periods on her feet'" would preclude Plaintiff from standing or walking for six hours a day.[62] Because there is no medical opinion in the record to support the ALJ's contrary conclusion that

---

[56] *Id.*

[57] *Id.* at 2.

[58] *Id.*

[59] *Id.*

[60] *Id.*

[61] *Id.* at 4.

[62] *Id.* at 4–5.

Plaintiff can stand and/or walk for six hours in an eight hour day, Plaintiff contends that the ALJ improperly fabricated a medical opinion.[63]

Plaintiff contends that this case is similar to *Williams v. Astrue*, where the Fifth Circuit held that the ALJ erred by rejecting the plaintiff's treating physicians' opinions that the plaintiff could not stand for six hours in an eight hour day and "impermissibly relied on his own medical opinions as to the limitations."[64] Furthermore, Plaintiff notes that a court in the Middle District of Louisiana has recognized that "courts that have ordered remand have read *Williams* as requiring a 'positive statement' or 'positive evidence' from a medical source that the plaintiff could, despite her limitations, perform the exertional demands of the work the claimant was deemed to be capable of performing by the ALJ."[65] Similarly, Plaintiff cites a decision by a district court in the Eastern District of Louisiana stating that "[t]he ALJ may not merely list evidence from the record and then reach his own conclusions as to plaintiff's RFC without the benefit of any opinion from a medical expert."[66]

Plaintiff contends that the Magistrate Judge cited various cases in which courts accepted an RFC determination made by the ALJ where there was no medical opinion regarding the plaintiff's RFC.[67] Plaintiff asserts that this situation is not relevant here because there were medical

---

[63] *Id*. at 5.

[64] *Id*. at 6–7 (citing 355 F. App'x 828 (5th Cir. 2009)).

[65] *Id*. at 7–8 (citing *Sheroll Brown v. Astrue*, Case No. 09-487 (M.D. La. Nov. 1, 2010)).

[66] *Id*. at 8 (citing *Dubois v. Social Security*, Case No. 13- 2438 (E.D. La. May 27, 2014)).

[67] *Id*. at 9–10.

opinions in the record regarding Plaintiff's RFC.[68] Plaintiff also notes that questionnaire medical reports similar to the one presented to Dr. Hebert have been upheld by the Fifth Circuit.[69]

Finally, Plaintiff contends that the Magistrate Judge urges bases for rejecting the findings of the treating and consulting physicians upon which the ALJ did not rely.[70] Plaintiff asserts that the Fifth Circuit has reasoned that "[t]he ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision."[71]

For these reasons, Plaintiff contends that the Magistrate Judge's recommendation should be rejected, the decision of the ALJ should be reversed, and Plaintiff should be found disabled during the period at issue.[72] Alternatively, Plaintiff asserts that the case should be remanded to the ALJ for a new hearing.[73]

## B.    The Commissioner's Response

The Commissioner did not file a brief in opposition to Plaintiff's objections despite receiving electronic notice of the filing.

---

[68] *Id*. at 10.

[69] *Id*. (citing *Audler v. Astrue*, 501 F.3d 446 (5th Cir. 2007), *Williams v. Astrue*, No. 08-30820, 2009 WL 4716027 (5th Cir. Dec. 10, 2009); *Wagner v. Apfel*, Case No. 98-30002 (5th Cir. 1998).

[70] *Id*. at 11.

[71] *Id*. (citing *Newton v. Apfel*, 209 F.3d 448 (5th Cir. 2000)).

[72] *Id*. at 14.

[73] *Id*.

# III. Standard of Review

## A. *Review of the Magistrate Judge's Report and Recommendation*

In accordance with Local Rule 73.2, this case was referred to a Magistrate Judge to provide a Report and Recommendation. A district judge "may accept, reject, or modify the recommended disposition" of a magistrate judge on a dispositive matter.[74] The district judge must "determine *de novo* any part of the [Report and Recommendation] that has been properly objected to."[75] A district court's review is limited to plain error of parts of the report which are not properly objected to.[76]

## B. *Standard of Review of Commissioner's Final Decision on DIB Benefits*

Under 42 U.S.C. § 405(g) the district court has the power to enter "a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."[77] Appellate review of the Commissioner's denial of DIB benefits is limited to determining whether the decision is supported by substantial evidence in the record and whether the proper legal standards were used in evaluating the evidence.[78] "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[79] The Court must review the

---

[74] Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1).

[75] *Id.*

[76] *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending time to file objections from ten to fourteen days).

[77] 42 U.S.C. § 405(g).

[78] *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Waters v. Barnhart*, 276 F.3d 716, 716 (5th Cir. 2002); *Loza v. Apfel*, 219 F.3d 378, 390 (5th Cir. 2000); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990).

[79] *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Perez*, 415 F.3d at 461; *Loza*, 219 F.3d at 393; *Villa*, 895 F.2d at 1021–22 (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983); *Randall v. Sullivan*, 956 F.2d 105, 109 (5th Cir. 1992)).

whole record to determine if such evidence exists.[80] However, the district court cannot "reweigh the evidence in the record, try the issues *de novo*, or substitute its judgment for the Commissioner's."[81] The ALJ is entitled to make any finding that is supported by substantial evidence, regardless of whether other conclusions are also permissible.[82] A court "weigh[s] four elements of proof when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) his age, education, and work history."[83]

## IV. Law and Analysis

### A.    *Applicable Law to Qualification for DIB Benefits*

To be considered disabled, a claimant must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."[84] The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability.[85] The regulations include a five-step evaluation process for determining whether an impairment

---

[80] *Singletary v. Bowen*, 798 F.2d 818, 822–23 (5th Cir. 1986).

[81] *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000).

[82] *See Arkansas v. Oklahoma*, 503 U.S. 91 (1992).

[83] *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995).

[84] 42 U.S.C. § 423(d)(1)(A).

[85] 20 C.F.R. §§ 404.1501 to 404.1599 & Apps., §§ 416.901 to 416.998 (2008).

constitutes a disability, and the five-step inquiry terminates if the Commissioner finds at any step that the claimant is or is not disabled.[86] The claimant has the burden of proof under the first four parts of the inquiry, and if he successfully carries this burden, the burden shifts to the Commissioner at step five to show that the claimant is capable of engaging in alternative substantial gainful employment, which is available in the national economy.[87]

In this case, the ALJ concluded that through the date last insured, Plaintiff has the following severe impairments: "obesity, myofascial pain syndrome, and osteoarthritis/degenerative spinal changes."[88] The ALJ found that through the date last insured, Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments under the regulations.[89] The ALJ found that through the date last insured, Plaintiff had the residual functional capacity ("RFC") to perform a range of light work, "as she could lift and/or carry (including pushing or pulling) 20 pounds occasionally and 10 pounds frequently, stand and/or walk for six hours per eight-hour work day and sit for six hours per eight-hour work day, all with normal breaks."[90] The ALJ determined that Plaintiff "could only occasionally balance, stoop, kneel, crouch, crawl and climb ramps or stairs, and could never climb ropes, ladders or scaffolds."[91] The ALJ also determined that Plaintiff "could frequently handle and finger with

---

[86] *Id.* §§ 404.1520, 416.920; *Perez*, 415 F.3d at 461.

[87] *Perez*, 415 F.3d at 461; *Newton*, 209 F.3d at 453.

[88] Adm. Rec. at 12.

[89] *Id.* at 13.

[90] *Id.* at 14.

[91] *Id.*

the bilateral upper extremities," but could not tolerate overhead reaching.[92] Based on this RFC, the ALJ found that through the date last insured, Plaintiff was capable of performing her past relevant work as an optician, tutor, assistant manager, library aide, and teacher aide.[93] Therefore, the ALJ determined that Plaintiff was not disabled from August 23, 2014, the alleged onset date, through December 31, 2014, the date last insured.[94] The Court may disturb that finding only if the ALJ lacked "substantial evidence" to support it.[95]

**B.**     *Did the ALJ substitute her medical opinion for those of the treating and consulting physicians?*

The sole argument Plaintiff raises in this appeal is that the ALJ's RFC determination is not supported by substantial evidence because the ALJ substituted her own medical opinion for the opinions of the treating and consultative physicians.[96] The Magistrate Judge found this argument unavailing.[97] Specifically, the Magistrate Judge found that the questionnaire responses of Dr. Hebert, Plaintiff's treating physician, were inconsistent with the medical records.[98] The Magistrate Judge also found that the consultative physician, Dr. Rabito, placed vague and undefined limitations on Plaintiff's physical abilities.[99] Therefore, the Magistrate Judge concluded that the

---

[92] *Id.*

[93] *Id.* at 17.

[94] *Id.*

[95] *See Perez*, 415 F.3d at 461

[96] Rec. Doc. 13.

[97] Rec. Doc. 15.

[98] *Id.* at 32.

[99] *Id.*

ALJ properly declined to give controlling weight to these opinions.[100] Furthermore, the Magistrate Judge determined that the ALJ's RFC determination was based on substantial evidence because the ALJ relied on reports from examining and reviewing physicians and adequately dealt with any dispute between them.[101]

Plaintiff objects to this determination and again argues that the ALJ improperly substituted her own medical opinion for the opinions of Drs. Hebert and Rabito.[102] Plaintiff argues that the opinion of Dr. Hebert clearly confirms that Plaintiff cannot perform light work because Dr. Hebert opined that Plaintiff is unable to stand and/or walk for six hours in an eight-hour day.[103] Plaintiff asserts that the opinion of Dr. Rabito also supports this conclusion because "any fair interpretation of [Dr. Rabito's] preclusion of activity which requires 'long periods on her feet'" would preclude Plaintiff from standing or walking for six hours a day.[104] Because there is no medical opinion in the record to support the ALJ's contrary conclusion that Plaintiff can stand and/or walk for six hours in an eight hour day, Plaintiff contends that the ALJ improperly fabricated a medical opinion.[105]

---

[100] *Id.*

[101] *Id.*

[102] Rec. Doc. 16-2 at 1.

[103] *Id.* at 4.

[104] *Id.* at 4–5.

[105] *Id.* at 5.

"Under the regulations and [Fifth Circuit] case law, the determination of residual functional capacity is the sole responsibility of the ALJ."[106] An RFC determination "is not a medical opinion."[107] Instead, "[a]n RFC determination is essentially a conclusion about what a claimant may still do despite his [or her] impairments."[108]

In *Williams v. Astrue*, the Fifth Circuit reversed the decision of an ALJ because the Fifth Circuit found that the decision was not supported by substantial evidence.[109] The evidence before the ALJ consisted primarily of the treatment notes and opinions of the plaintiff's three treating physicians, who all agreed that the plaintiff was unable to perform anything but sedentary work.[110] The ALJ refused to give the opinions of the treating physicians controlling weight.[111] Even "[a]ssuming that the ALJ was entitled to not give these physicians' opinions controlling weight," the Fifth Circuit determined that "there is still no evidence supporting the ALJ's finding that [the plaintiff] can stand or walk for six hours in an eight-hour workday."[112] Moreover, the Fifth Circuit noted that a physical therapy discharge summary also directly contradicted the ALJ's finding because it stated that the plaintiff could only stand for thirty minutes after completing her

---

[106] *Taylor v. Astrue*, 706 F.3d 600, 602–03 (5th Cir. 2012) (internal citations omitted).

[107] *Joseph-Jack v. Barnhart*, 80 F. App'x 317, 318 (5th Cir. 2003) (citing 20 C.F.R. §§ 416.946, 416.927(e)).

[108] *Holifield v. Astrue*, 402 F. App'x 24 (5th Cir. 2010) (citing *Perez v. Barnhart*, 415 F.3d 457, 462 (5th Cir. 2005)).

[109] 355 F. App'x 828, 832 (5th Cir. 2009).

[110] *Id.* at 831.

[111] *Id.*

[112] *Id.*

treatment.[113] Therefore, because the ALJ "impermissibly relied on his own medical opinion as to the limitations presented by 'mild to moderate stenosis' and 'posterior spurring' to develop his factual finding," the Fifth Circuit concluded that the ALJ's RFC determination was not supported by substantial evidence.[114]

*Williams* is an unpublished decision, which relied on the Fifth Circuit's published decision in *Ripley v. Chater*.[115] In *Ripley*, the Fifth Circuit recognized that as a general rule, an "ALJ should request a medical source statement describing the types of work that the applicant is still capable of performing."[116] "The absence of such a statement, however, does not, in itself, make the record incomplete."[117] Where no medical statement describing the plaintiff's ability to work has been provided, the Fifth Circuit instructs that a reviewing court must focus "upon whether the decision of the ALJ is supported by substantial evidence in the existing record."[118] In *Ripley*, the Fifth Circuit found that the ALJ's determination that the plaintiff was capable of performing sedentary work was not supported by substantial evidence because although the record established that the plaintiff had a back condition that required surgery, it "did not clearly establish [] the effect [the plaintiff's] condition had on his ability to work."[119] Therefore, on remand, the Fifth Circuit

---

[113] *Id.* at 831–32.

[114] *Id.* at 832.

[115] 67 F.3d 552 (5th Cir. 1995).

[116] *Id.* at 557.

[117] *Id.*

[118] *Id.*

[119] *Id.*

instructed the ALJ to obtain a report from a treating physician regarding the effects of the plaintiff's back condition on his ability to work.[120]

In this case, the ALJ found that through the date last insured, Plaintiff had the residual functional capacity to perform a range of light work, "as she could lift and/or carry (including pushing or pulling) 20 pounds occasionally and 10 pounds frequently, stand and/or walk for six hours per eight-hour work day and sit for six hours per eight-hour work day, all with normal breaks."[121] The ALJ determined that Plaintiff "could only occasionally balance, stoop, kneel, crouch, crawl and climb ramps or stairs, and could never climb ropes, ladders or scaffolds."[122] The ALJ also determined that Plaintiff "could frequently handle and finger with the bilateral upper extremities," but could not tolerate overhead reaching.[123]

In reaching the RFC determination, the ALJ gave partial weight to the January 6, 2014 report of Dr. Rabito, a consultative examiner, wherein Dr. Rabito opined that the "[m]ost significant of the physical findings w[ere] [Plaintiff's obesity and inability to sustain heel or toe walking due to poor balance and weakness in the lower extremities."[124] Dr. Rabito also opined that Plaintiff "appeared to be capable of normal ambulatory activity, which does not require strenuous and repetitive use of her upper extremities or long periods on her feet."[125] The ALJ stated that "the

---

[120] *Id.* at 557–58.

[121] Adm. Rec. at 14.

[122] *Id.*

[123] *Id.*

[124] *Id.* at 16, 229.

[125] *Id.* at 229.

opinion [of Dr. Rabito] is not given great weight in light of its use of vague and ambiguous terms such as 'strenuous' and 'long,' which are not defined."[126]

The ALJ gave little weight to the April 14, 2016 questionnaire completed by Dr. Hebert, Plaintiff's treating physician, wherein Dr. Hebert opined that standing/walking or sitting for six hours out of an eight-hour work day would "likely cause [Plaintiff] significant pain or exacerbate her condition."[127] The ALJ noted that Dr. Hebert treated Plaintiff once every three months from 2012 to March 2016, and during the relevant period likely would have only treated Plaintiff once or twice.[128] More significantly, the ALJ found that Dr. Hebert's opinion was not supported by the objective findings in the record.[129]

Specifically, the ALJ noted that Plaintiff's treatment notes during the period at issue showed only routine rheumatology care for generalized pain, which was contributed to by her morbid obesity.[130] The ALJ found that Plaintiff's physical examinations demonstrated normal gait, posture, pulses, sensation, coordination, and deep tendon reflexes, with no swelling.[131] Additionally, despite Plaintiff's complaints of pain, the ALJ noted that the medical evidence showed her treatment to be limited to the conservative method of medication, there was no

---

[126] *Id.* at 16.

[127] *Id.* at 16–17, 280.

[128] *Id.* at 17. As noted by the Magistrate Judge, this statement is inconsistent with Dr. Hebert's treatment notes, which show that he actually saw Plaintiff three times during that period, as well as on April 9 and July 9, 2014, within a few months before the alleged onset date. *Id.* at 235–42.

[129] *Id.* at 17.

[130] *Id.* at 15.

[131] *Id.*

evidence of physical therapy treatment, and Plaintiff' never required arthroscopic surgery or shoulder joint replacement.[132]

The ALJ was justified in declining to accept Dr. Hebert's restrictions that Plaintiff could not stand/walk for six hours in an eight-hour work day and that she experienced swelling, pain, shortness of breath and fatigue that required her to recline daily and precluded work activity, because no objective findings by Drs. Hebert, Sedrish or Rabito supported those limitations. Physical examinations of Plaintiff's back, extremities and hands during the relevant time period were generally within normal limits, and Plaintiff was treated conservatively with medication. Dr. Rabito indicated that Plaintiff had no significant abnormalities, and both Dr. Rabito and Dr. Sedrish noted that Plaintiff was able to ambulate normally. Nevertheless, given the equivocal nature of Dr. Rabito's opinion that Plaintiff "appeared to be capable of normal ambulatory activity, which does not require strenuous and repetitive use of her upper extremities or long periods on her feet," there is no evidence supporting the ALJ's finding that Plaintiff can stand or walk for six hours in an eight-hour workday. Accordingly, a remand in this case is appropriate. Upon remand, the ALJ should request clarification from Plaintiff's treating physician and may request a supplemental opinion from the consultative examiner, or both.[133] The evidence should include a functional capacity evaluation or other statement of the effects of Plaintiff's condition on her ability to work.[134]

---

[132] *Id*. at 16.

[133] *See Williams v. Astrue*, 355 F. App'x 828, 832 (5th Cir. 2009).

[134] *Id.*

## V. Conclusion

For the foregoing reasons, the Court finds that there is no evidence supporting the ALJ's finding that Plaintiff can stand or walk for six hours in an eight-hour workday. Therefore, the ALJ's RFC determination is not based on substantial evidence. Accordingly,

**IT IS HEREBY ORDERED** that the Court **SUSTAINS** Plaintiff's objections and **REJECTS** the Magistrate Judge's recommendation;

**IT IS FURTHER ORDERED** that the case is **REMANDED** to the ALJ for additional proceedings consistent with this opinion.

**NEW ORLEANS, LOUISIANA,** this 13th day of February, 2019.

**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**